Fidelity Trust Co. et al., Executors, v. Whitehall Cement Mfg. Co., Appellant.

Argued December 4, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Chester N. Farr, Jr.,* with him *William A. Glasgow, Jr.,* for appellant.—Where an employee is paid by a percentage of the annual profits or earnings instead of or in addition to a fixed salary, on the termination of the contract within one of the computation periods the employee is only entitled to his proportionate share of the profits or earnings up to the date of the termination of his employment, the principle of computation being the same as in the case of a fixed salary.

*William Clarke Mason,* with him *John Russell, Jr.,* for appellee.—An employee or his representatives may recover the fair value of any services rendered by him for which, because illness or death stopped performance, he could not recover on the contract, unless the

contract clearly makes the whole performance a prerequisite to the existence of an obligation to pay for any part of the work: Blakely v. Sousa, 197 Pa. 305; Blakely v. Sousa, 197 Pa. 335.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1929:

In this action of assumpsit the executors of William H. Harding sought recovery from defendant corporation of the amount alleged to be due to him at the time of his death under the terms of his contract of employment with it, as president and general manager.

Defendant is engaged in the manufacture of cement. It had a contract of employment with Harding for a period of three years from January 1, 1923, at a salary of $20,000 per annum. In addition to salary, he was to receive for his services as general manager an annual commission of six per cent on all net earnings of the corporation above the sum of $60,000; a method of determining the net earnings was set forth in the contract.

Harding died March 12, 1924, and the question is as to the amount of commission which his estate is entitled to receive. Defendant concedes that there was due six per cent of the profits made on cement delivered up to the time of his death amounting to $7,813.79, and this sum was paid to plaintiffs and accepted without prejudice. Plaintiffs claim that in addition they are entitled to six per cent of the profits made on the number of barrels of cement shipped after Harding's death and during the balance of the year 1924 on contracts which were in existence prior to his decease. This amounts to $28,359.88, which with interest from his demise to the date of the trial, $5,104.77, makes up the verdict $33,464.65, which the court, adopting plaintiffs' construction of the contract, directed the jury to find. Defendant, alleging that this view of the provisions of the contract is a mistaken one, appeals for our judgment as to its meaning, contending that it has paid all that the contract requires, or, in the alternative, that the commission is to be cal-

culated upon a proportion of the entire year's profits measured by the fractional part of the year, one-fifth thereof, in which Harding lived. We are of opinion that the latter method is the correct one under the terms of the contract and works out a just and equitable result to both parties.

It is not necessary to recite all the provisions of the agreement. A single paragraph suffices as it embraces everything relating to the deceased's extra compensation: "2. That the salary to be paid him [Harding] by said corporation for discharging the duties of general manager, shall be at the rate of twenty thousand dollars ($20,000.00) per annum, payable monthly, and in addition to this salary, he is to receive a commission *annually* of six (6) per cent on all the net earnings of the corporation over and above the sum of sixty thousand dollars ($60,000.00) it being understood that to arrive at the net earnings of the corporation, neither any charge for depreciation nor any interest charges upon its bonds are to be deducted from its earnings. The said net earnings shall be computed on the same basis as that used to arrive at the commission earned in previous years, and is not to be affected or changed by any change of accounting methods called for by the United States Government or the State of Pennsylvania. Said commission shall be paid said Harding *as soon after the end of each year as the earnings can be determined,* and the method of determining said earnings shall be approved by the certified public accountants of the corporation." From this it will be seen that the commission is to be calculated upon the annual profits of the business. It would not matter how much profit was made during part of a year if the entire year's operations did not show a gain. If living, he could not have successfully claimed a commission on part of the year's profits, only upon those shown in the entire twelve months. It might well have been that in the year 1924 up until the date of his death profits had been earned but taking the entire year

the business had shown a loss. If this were so, it could not be argued that any commission was due. Blakely v. Sousa (No. 1), 197 Pa. 305, and Blakely v. Sousa (No. 2), 197 Pa. 335, cited by appellees as sustaining their view and that of the trial judge, are not controlling authorities; the terms of the contracts appearing in those cases and in this are entirely different. There the parties agreed that the profits from music composed during the term of employment should be their joint property, and the right to share in them was without limitation, while here the right to a commission was only coincident with the term of employment. If the contract were one of salesmanship for the sale of the cement on commission, there might be merit in appellee's contention. The contract, however, covers no such relation. We conclude, therefore, that commissions are to be calculated on the basis of the entire years' profits proportioned to the portion of the year the deceased served the defendant. The figures as to this sum were agreed upon at bar and would make the amount due plaintiffs $4,544.76. It was also agreed that if our determination should be that this sum rather than the amount of the judgment entered by the court below represents the limit of plaintiff's recovery we should enter judgment for this sum and thus avoid the necessity for further proceedings in the court below. Accordingly the judgment of the court below is modified and judgment is now entered in favor of plaintiffs and against defendant for $4,544.76, with interest from January 1, 1925.