JOHN Q. A. MORSE vs. JOHN S. BENSON.

SAME vs. JAMES M. CLARK.

SAME vs. JAMES M. CLARK, JR.

Plymouth.   October 15, 1889. — May 9, 1890.

Present: FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Easement — Right of Way by Necessity — Discontinuance of Highway.*

A right of way by necessity, acquired by the grantee of a lot of land, to a highway
crossing an adjoining lot of the grantor, terminates at the side of the highway,
and when that is discontinued and a new highway laid out beyond it over the
grantor's lot, will not be enlarged so as to enable the grantee to use the discon-
tinued portion for the purpose of reaching the new highway.

TORT for taking down the plaintiff's fence and driving over
his land.   At the trial in the Superior Court, before *Hammond,*
J., there was evidence that in 1848 Sumner Benson, who then
owned two adjoining lots of land, numbered 27 and 57 re-
spectively, conveyed lot 27 to Stillman Benson; that a high-
way then crossed lot 57, but no public or private way led to
lot 27; that subsequently Sumner Benson conveyed lot 57 to
the plaintiff, and Stillman Benson devised lot 27 to Maria
Clark; that a portion of the highway was duly discontinued
and a new highway laid out over lot 57, leaving a short piece
of the discontinued highway lying between the new highway
and a point where an alleged way by necessity to lot 27 inter-
sected the old highway; that the plaintiff erected a fence
across the end of the discontinued portion, and along the line
of the new highway; and that the defendants, one of whom
was the husband of Maria Clark and all of whom acted as her
agents, took down the fence, against the plaintiff's orders, and
drove over such discontinued portion and the alleged right of
way by necessity to lot 27.

The judge refused to instruct the jury, as requested by the
plaintiff, in substance, that Maria Clark had no right of way
by necessity over the discontinued portion of the old highway;
but instructed them that, if she had a right of way by necessity
over the plaintiff's land from her lot to the highway as located

at the time of the grant to Stillman Benson creating such right of way, and the location of the highway was changed to another part of the plaintiff's lot, she would still have a right of way by necessity over the discontinued portion of the old highway to such newly located highway.

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*C. G. Davis*, for the plaintiff.

*H. Kingman*, for the defendants.

KNOWLTON, J. By the conveyance of the plaintiff's predecessor in title, the predecessor in title of Maria Clark acquired a way of necessity from his lot to the highway which crossed the lot now owned by the plaintiff. By virtue of the right so acquired, he had convenient access to and from his lot, his right of passage between his land and the line of the highway being by implication under his grant, and his right from that point along the highway being merely to travel as one of the public.

A right of way by necessity is construed strictly, and it extends no farther than the necessity which creates it. *Viall* v. *Carpenter*, 14 Gray, 126. It terminates when it is no longer necessary to the enjoyment of the estate to which it belongs. Immediately upon the conveyance which created the way in the present case, the rights of the parties became fixed, and the estate which the plaintiff now owns became subject to an easement in favor of the estate belonging to the devisor of Maria Clark. That easement was simply a right of way so long as it should be needed between the line of the highway and the lot conveyed. There is no principle of law under which that easement could be subsequently enlarged or made more burdensome. The proprietor of the dominant estate, as the owner of an easement in land extending to the line of the highway, was fully protected in his right of access to his lot. That easement was valuable only in connection with his right as an abutter, and as one of the public, to use the highway. Upon the discontinuance of the highway he was entitled to damages, on the ground that he was thereby cut off from his only means of reaching his land, and that his lot and his easement had become of little value. His remedy was to be sought in a claim for damages, and not by attempting to extend his way of

necessity over land which, on the discontinuance of the highway, had reverted to the owner of the fee.

It has been suggested that a way of necessity rests on the doctrine of an implied grant, and that the grant implied in the present case was of an easement in land bounded on a highway, and that one who grants land described as bounded on a highway is estopped on the discontinuance of the way from claiming a right to use the land which reverts to him for any purpose inconsistent with the continued use of it as a public highway. *Parker* v. *Framingham*, 8 Met. 260, 267. *Plitt* v. *Cox*, 43 Penn. St. 486. Without determining how far the statements in the cases referred to should be approved or extended, it is enough to say, that, if the grant implied in the present case were to be written into the deed, it would be unnecessary in describing the easement to describe the land as bounded on the highway, or to refer to the highway at all. A monument might be set on the line of the highway, and the way of necessity might be described as terminating at that, without the use of any language which would give rights, either by implied grant or estoppel, in the highway itself. If the deed had expressly described such a way as appurtenant to the land sold, it would hardly be contended that, upon the discontinuance of the highway, the grantee would acquire additional rights against the grantor. In the opinion of a majority of the court, the entry must be, *Exceptions sustained.*