NEW ENGLAND CONTINENTAL MEDIA, INC. *vs.* TOWN OF
MILTON.

No. 90-P-765.

Suffolk. November 21, 1991. - April 2, 1992.

Present: BROWN, PORADA, & GREENBERG, JJ.

*Eminent Domain*, Extent of taking, Validity of taking. *Easement. Real
Property*, Easement. *Estoppel. Municipal Corporations*, Estoppel.

A town's eminent domain taking in fee simple of land for conservation
   purposes had the effect of extinguishing an abutting landowner's ease-
   ment rights in an access road over the land so taken. [376-377]
Where a town sought to prevent an abutting landowner from asserting
   easement rights in conservation land that the town had taken by emi-
   nent domain, the town's prior failure to object to use of the land by that
   landowner or its predecessor in interest did not give rise to an estoppel
   against the town; moreover, inasmuch as the order of taking unambigu-
   ously stated the town's intent to extinguish all rights in the land, the
   doctrine of acquiescence was inapplicable. [377-378]
A town's eminent domain taking of a parcel of land in fee simple, which,
   by extinguishing easement rights, resulted in an abutting parcel's be-
   coming landlocked, did not give rise to an easement by necessity in
   favor of the owner of the abutting parcel. [378]


CIVIL ACTION commenced in the Land Court Department
on March 26, 1981.

The case was heard by *John E. Fenton, Jr.,* J.

*Robert H. Quinn* for the plaintiff.

*John P. Flynn,* Town Counsel, for the defendant.

BROWN, J. This appeal concerns a claim of easement
rights in property now owned by the town of Milton and used
for conservation purposes. Abutting the Milton conservation
land, on its 16.7-acre property in the city of Quincy, the
plaintiff operates a radio station. The plaintiff acquired the
Quincy property in 1978 by a deed that contained the follow-
ing provision: "The above-described premises are conveyed

subject to and with the benefit of rights, easements, and re-strictions of record, insofar as now in force and applicable." This provision occurs in all deeds in the plaintiff's chain of title back to and including deeds from 1943 and 1944, and the 1943 deed apparently created the easement in question.[1] The town does not dispute that a recorded easement once ex-isted in the plaintiff's chain of title but argues that a 1965 eminent domain taking of the servient estate by the town ex-tinguished any easement rights the owners of the dominant estate — the plaintiff's property — may have had.

The order of taking, recorded on November 3, 1965, ac-knowledged the owners and mortgagee of the property and also contained the following language: "it is believed that no other persons have any interest in said land but the right, title and interest of every person in said land is included in this taking." The town gave notice of the taking to the named owners and mortgagee and paid damages to the own-ers as compensation for the taking. Direct notice of the tak-ing was never given (and no damages were paid) to the plaintiff's predecessor in interest.

The parties stipulated that since 1943 there has been unin-terrupted use of an access road which runs over the Milton land to the Quincy property on the part of the plaintiff and its predecessors and that this access road is the sole means of vehicular access to the plaintiff's property. Between 1953 and 1978, the access road was an eight-foot wide gravel and dirt road. In 1970, the town allowed water lines to be installed across the Milton land to the Quincy property and has sup-plied the plaintiff with town water. In 1978, the plaintiff

---

[1]The 1943 deed contained language to the effect that the grantees of the property had, "together with a right in common with others entitled thereto and to the land over which said way extends to pass and repass over a strip of land forty feet wide as shown on said plan over other land . . . running from the easterly end of Riverside Avenue in Milton, to the premises herein described, for convenient egress and ingress, but the grantee shall have the right to relocate said way, if necessary . . . ."

As for the Milton property (the servient estate for the easement), pre-1949 conveyances of this parcel made reference to rights of way, but post-1949 transfers made no reference to any right of way, servient or dominant.

paved the access road and widened it by two or three feet. Prior to 1979, only three or four persons a day would use the access road. In 1979, however, approximately ten or twelve individuals a day began to use the access road. In 1980, the town placed a locked gate across the access road and gave the plaintiff a key.

The trial judge ruled, we believe correctly, that the eminent domain taking by the town in 1965 extinguished the plaintiff's easement rights in the access road and that therefore the plaintiff has no rights over the access road or any part of the Milton land. As did the trial judge, we reject the plaintiff's arguments that (1) the town did not intend to include the easement rights of the Quincy property in the eminent domain taking, (2) the town acquiesced in the plaintiff's use of the right of way and therefore is estopped from prohibiting the plaintiff's continued use, and (3) the plaintiff has an easement by necessity which could not be extinguished by the eminent domain taking.[2]

1. *The eminent domain taking.* The taking of the Milton land was effectuated pursuant to G. L. c. 40, § 8C. Generally, an eminent domain taking in fee simple extinguishes all other interests in the subject property. *Emery* v. *Boston Terminal Co.*, 178 Mass. 172, 184 (1901). See *Silberman* v. *United States*, 131 F.2d 715, 717 (1st Cir. 1942). In particular, where an easement exists, the taking of the servient estate will destroy the easement rights of the dominant estate. See *Walpole* v. *Massachusetts Chem. Co.*, 192 Mass. 66, 68-70 (1906). See also Restatement of Property § 507 (1944); 3 Nichols, Eminent Domain § 9.2[5] (rev. 3d ed. 1991).

While a taking must be limited to the reasonable necessities of the case (*Flower* v. *Billerica*, 324 Mass. 519, 523 [1949]; Restatement of Property, *supra*), the town could certainly conclude that use of an access road by a corporation was inconsistent with the conservation purposes for which the land was originally taken. See *Poremba* v. *Springfield*, 354

---

[2]There is no argument on appeal that an easement by prescription had been established.

Mass. 432, 434 (1968). Contentions by the plaintiff to the contrary are unavailing.

We agree with the trial judge's determination that the town intended to take the Milton land in fee simple, unencumbered by easement rights. As noted, the language of the order of taking explicitly stated that "the right, title and interest of every person in said land is included in this taking." Even if the town was unaware of interests in the land belonging to other than those named in the order of taking, its intent to extinguish all rights in the land was unambiguous.

The fact that the plaintiff's predecessor in interest did not receive actual notice of the taking does not invalidate the town's actions. See *Walpole* v. *Massachusetts Chem. Co.*, 192 Mass. at 70; *United States* v. *125.2 Acres of Land*, 732 F.2d 239, 243 (1st Cir. 1984). See also *Grove Hall Sav. Bank* v. *Dedham*, 284 Mass. 92, 94 (1933). Moreover, the plaintiff has no standing to challenge the validity of the 1965 taking. That right belonged only to the holder of the easement at the time of the taking. See *Markiewicus* v. *Methuen*, 300 Mass. 560, 564 (1938); *Commonwealth* v. *Quincy Memorial Co.*, 13 Mass. App. Ct. 1047, 1047-1048 (1982).

2. *Estoppel.* The plaintiff claims that, since the town did not object to the plaintiff's (and the plaintiff's predecessor in interest's) use of the access road, the town is estopped from preventing the plaintiff's continued use. "Generally, the doctrine of estoppel is not applied against the government in the exercise of its public duties." *Gamache* v. *Mayor of N. Adams*, 17 Mass. App. Ct. 291, 294 (1983). In any event, these facts do not call for estoppel against the town. See *DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct. 506, 516 (1979), and authorities cited therein; *Harrington* v. *Fall River Hous. Authy.*, 27 Mass. App. Ct. 301, 308-309 (1989). See also *Gamache* v. *Mayor of N. Adams, supra.* Reliance by the plaintiff on the common law doctrine of acquiescence is also misplaced: that doctrine applies only where an ambiguity exists in a deed, see *Ryan* v. *Stavros*, 348 Mass. 251,

260-261 (1964), and no ambiguity exists here in the deed or in the order of taking.[3]

3. *Easement by necessity.* An easement is said to arise (or be implied) by necessity when a common grantor carves out what would otherwise be a landlocked parcel. In this case, the grantor did not leave a landlocked parcel but, instead, recorded an explicit easement allowing access to what is now the plaintiff's property. A subsequent taking by eminent domain that results in a property's becoming landlocked does not give rise to an easement by necessity. Cf. *Morse* v. *Benson*, 151 Mass. 440, 441 (1890)(easement to allow access to highway could not be extended when highway was relocated). In addition, "easements because of necessity can be implied only for the benefit of or against parties to a particular conveyance and their successors in title, and not for the benefit of or against strangers to the chain of title." *Uliasz* v. *Gillette*, 357 Mass. 96, 102 (1970), citing Restatement of Property, *supra* at §§ 474-476. The town of Milton did not derive its title from the plaintiff's predecessors in interest; it derived its title from the eminent domain proceeding. Restatement of Property, *supra* at § 507 comment b. We therefore reject the argument that the plaintiff has an easement by necessity.[4]

*Judgment affirmed.*

---

[3]Even if the town's actions in allowing the plaintiff to continue to use this access road arguably appear to be equivocal, we think it plausible that the town's lack of objection to the use of this road amounted to a license which the town could terminate at any time. *Van Szyman* v. *Auburn*, 345 Mass. 444, 449 (1963).

[4]Echoing the statement of the trial judge, we note that our decision "in no way concerns the plaintiff's right to compensation for the 1965 taking."